COMFORT H. LARIMORE V. JOHN C. MILLER.

No. 15,610.    (96 Pac. 852.)

SYLLABUS BY THE COURT.

1. PARTIES—*Defect*—*Demurrer to Evidence*.  The question of a
defect of parties defendant can not be raised by a demurrer
to the plaintiff's evidence; and where such a demurrer has
been sustained, and this court on review is of the opinion
that there was some evidence to support all the essential al-
legations of the petition, the ruling will be reversed, notwith-
standing it may appear that a final judgment for the plaintiff
could not rightfully have been rendered without the bringing
in of additional parties.

2. WATERCOURSES—*Evidence*.  The evidence examined and held
to have some tendency to show the existence of a watercourse.

Error from Clay district court; SAM KIMBLE, judge.
Opinion filed July 3, 1908.  Reversed.

*F. P. Harkness, C. C. Coleman,* and *F. L. Williams,*
for plaintiff in error.

*R. C. Miller,* and *S. H. Hamilton,* for defendant in
error.

The opinion of the court was delivered by

MASON, J.:  Comfort H. Larimore brought an action
against John C. Miller charging him with obstructing
a natural watercourse flowing from her land to his, and
asking for damages for injury thereby occasioned to
her crops and for a mandatory injunction for the re-
moval of the obstruction.  A demurrer to the evidence
of the plaintiff was sustained, and she prosecutes error.

The principal controversy is whether there was any
evidence tending to show the existence of a water-
course at the point on the defendant's land where he
erected an embankment.  The plaintiff's land, which
measures a half mile from north to south, lies half a
mile north of the defendant's.  She claims that a water-
course comes down from the north and crosses her land
and the intervening tract to that of the defendant, over

which it extends, discharging into the Republican river.. The evidence clearly tended to establish that a stream. of water fed in part by springs and in part by the. drainage from a considerable area, and having all the essential attributes of a watercourse, flows from the· north toward the plaintiff's land. The defendant practically concedes this, but asserts that the evidence not. only fails to show that the stream retains its character· as a watercourse until it reaches his land but discloses affirmatively that it loses that character by spreading· out over level ground far above his northern boundary..

It is not necessary to review the evidence in detail.. There was testimony that the stream referred to, which. some of the witnesses called a creek, crosses the plain-- tiff's land and the intervening tract and goes upon the·· land of the defendant; that there is a depression for· the full length of this course, through which the water· at times flows, and which was variously spoken of as a· "draw," a "ravine," a "gully," a "ditch," and a "chan--nel" (the witness who used that term saying he meant. by it "a place where water runs—a low place with banks; on each side"); that when there is no water in the· stream one can tell where its course and its banks are;· that it then looks "just like any creek that had went. dry in the dry spell." Some of these statements were· modified and explained upon cross-examination so far· as to impair their force, but not so far as to eliminate them altogether. There was also testimony of a contrary tendency, but it was not given by the plaintiff' herself; and, even if it was absolutely inconsistent with. the existence of a watercourse on the defendant's land,. it only presented an issue of fact to be determined upon. conflicting evidence. It did not justify a decision as a, matter of law that there was an entire failure to sup--port the allegations of the petition.

The defendant was called by the plaintiff as a wit--ness. He testified that the embankment sought to be· enjoined was erected, in pursuance of an agreement

with him, by two other landowners whose property was to be benefited by it—he furnishing the land and they doing the work. He now contends that as these other persons were interested in the subject-matter of the litigation and as their rights would be affected by the judgment their presence was necessary to a determination of the controversy, and their absence warranted the court in sustaining the demurrer to the evidence. In support of this contention he cites *State of Kansas v. Anderson,* 5 Kan. 90, *Carpenter, Treas., v. Hindman,* 32 Kan. 601, 5 Pac. 165, *McCarthy v. Marsh,* 41 Kan. 17, 20 Pac. 479, *City of Anthony v. The State, ex rel.,* 49 Kan. 246, 30 Pac. 488, and *U. T. Rld. Co. v. Rld. Comm'rs,* 52 Kan. 680, 35 Pac. 224. In these cases injunctions were asked against public officers without bringing into court the only persons who had any actual interest in the performance of the acts sought to be enjoined. The court held that no final injunction ought to be granted under such circumstances, because there could be no real litigation without adverse parties. Here, however, a different situation is presented. The defendant is personally concerned in resisting the plaintiff's demand. The question whether other persons were necessary parties was one proper to have been raised by answer. Not having been so raised, it was waived so far as the defendant could waive it. (Civ. Code, § 91.) The code, however, provides that "when a determination of the controversy can not be had without the presence of other parties, the court must order them to be brought in." (Civ. Code, § 41.) And it is held that under this provision it is the duty of the court, of its own motion, and notwithstanding the action of the parties, to require the bringing in of any persons whose rights will be prejudiced by a judgment, and that where this is not done a reversal may be had at the instance of a party. (*Osterhoudt et al. v. B'd Sup'rs, etc., et al.,* 98 N. Y. 239; *Steinbach v. Prudential Ins. Co.,* 172 N. Y. 471, 65 N. E. 281; *Wheeler*

v. *Lack*, 37 Ore. 238, 61 Pac. 849; *Reger v. Gall*, 54 W.
Va. 373, 46 S. E. 147; *Emerson and another v.
Schwindt and another*, 108 Wis. 167, 84 N. W. 186.)
If the persons who constructed the embankment were
necessary parties to the final determination of the case
it would doubtless have been proper for the court,
whenever this fact was brought to its attention, to
order the plaintiff to make them parties, under penalty
of a dismissal of the action if she should refuse or
neglect to do so. But the demurrer to the evidence pre-
sented no question of defective parties, and to sustain
the ruling thereon upon such a ground would be to bar
the plaintiff's right of recovery because of a defect to
which her attention had not been called and which she
was given no opportunity to remedy.

The demurrer was general, and for the reasons stated
should have been overruled. It is therefore not neces-
sary to decide whether there was any evidence to sup-
port the claim for damages. . The injury to the crop
seems to have resulted principally from the river over-
flowing its banks, but may have been due in part to
the embankment complained of. The crop was grown
either by a tenant paying rent in kind or by an occupant
on shares—"a cropper"—the evidence does not clearly
show which. (See 18 A. & E. Encycl. of L. 173, 176;
24 Cyc. 1468, 1471.) Without the issue being more
sharply presented it is not thought expedient to decide
whether and to what extent the owner might recover
under either condition.

The judgment is reversed and the cause remanded
for further proceedings.