No. 34,863

IRA S. BROTHERS and A. W. VOLKMANN, Special Administrator de bonis non of the Estate of Effie E. Brothers, Deceased, *Appellees,* v. OTTO A. ADAMS, TILLIE ADAMS and FRED ALTENBAUMER, Executor of the Last Will and Testament of Mrs. C. Altenbaumer, Deceased, *Appellants.*

(107 P. 2d 757)

Opinion filed December 7, 1940.

*Roy C. Davis* and *Warren H. White,* both of Hutchinson, for the appellants; *Bronce Jackson,* of Lyons, of counsel.

*Ben Jones* and *Edward Wahl,* both of Lyons, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to set aside assignments of personal property on account of mental incapacity of, and undue influence and fraud exercised upon, the assignor. Judgment was for the plaintiffs. Defendants appeal.

The action was instituted by Ira Brothers. In his petition he alleged that he was the sole heir at law of his deceased wife, Effie Brothers, who died September 1, 1938; that the defendant, Otto Adams, was not in any way related to plaintiff or his deceased wife; that plaintiff and his wife were married September 9, 1929, and had lived together as man and wife until her death; that Effie Brothers

owned at the time of her death real property in Texas, Indiana and Illinois, and personal property of the value of $20,000, consisting of stocks, bonds, mortgages, moneys, furniture and jewelry. The petition further stated that on July 18, 1938, on account of the physical condition of his wife she and plaintiff planned for her to be taken to a hospital at Hutchinson for observation and medical care; that before plaintiff could complete his plans, defendants, Tillie Adams, wife of defendant Otto Adams, and Mrs. C. Altenbaumer, mother of Tillie Adams, persuaded Effie Brothers to go with them to the Hutchinson hospital, over the protest of plaintiff. The petition further alleged that on July 18, Effie was informed that her condition was of a serious nature; that on July 21 she underwent a serious operation, as a result of which it was evident that she could not recover; that during this time she displayed full affection toward plaintiff. The petition further alleged that Otto Adams, Tillie Adams and Mrs. Altenbaumer frequently visited Effie while she was helpless and, knowing her weakened condition, with the fraudulent intent of influencing her mind and her actions for the benefit of Otto Adams; that on July 25, 1938, while Effie was suffering great physical pain and was subject to delusions, hallucinations and other unsound mental conditions as a result of her operation, defendants induced Effie to sign what purported to be a bill of sale of her personal property of the value of $20,000 to Otto Adams, knowing at the time that she was not capable of transacting any business or of comprehending the effect of such a bill of sale; that on July 23, 1938, the defendants fraudulently induced Effie to sign an instrument in writing purporting to assign to Adams bonds of the value of $4,500, which were on deposit in a bank, knowing that Effie did not have mental capacity to comprehend the nature of her act, and under the same circumstances as set out as to the bill of sale; that on July 23, in addition to all the above, the defendants fraudulently induced Effie to sign a written instrument purporting to assign to Otto Adams certain East End Builders bonds of the approximate value of $5,000, knowing that Effie did not have mental capacity to comprehend the effect of her acts. The petition then alleged that defendants fraudulently took advantage of the mental condition of Effie by displaying undue sympathy for her and by fraudulently telling her this plaintiff, her husband, had not been a loving husband, but was possessed only of the intention to procure the property of his wife. The petition further alleged that on July

23, defendants, in order to induce Effie to sign the instruments, fraudulently represented to her that Adams would carry out any of her oral requests by distributing all the property conveyed in accordance with her wishes; that defendants represented to her that it was necessary to execute the instruments in order that such transfer would be of legal effect; that Adams had no intention of distributing all the property conveyed in accordance with her wishes; that Adams had no intention of distributing the property to anyone but himself; that relying on these false representations Effie signed the instruments without knowing their true purport; that Adams claimed sole ownership of the property. The petition further stated that the value of the personal property sought to be retained by Adams was approximately $20,000.

The prayer of the petition was that all these conveyances be set aside, and that plaintiff Brothers be declared the sole heir of Effie and entitled to the possession of all the property; that in case all the property could not be found a judgment be given Brothers against defendants for $20,000. The prayer also asked for an accounting against Adams.

The answer of Adams was first a general denial. It then alleged that Effie executed the instruments referred to in the petition in her lifetime, and that on July 23 she executed an assignment of East End Builders bonds, of which he could not give a detailed description because they were in the hands of Brothers, but defendant alleged that he believed they were of the value of $11,500. The answer then alleged that the personal property conveyed to him by the bill of sale was not given to him for his own use but to deliver to certain other parties; that Effie made an absolute conveyance of the property to him during her lifetime so that she would not be the owner of it at her death; that she trusted Adams to give all her property to eleven different named persons. The answer set out just what property was to go to each of these eleven people; that he was the owner of the property and entitled to possession of it for the purpose of carrying out his trust. The answer further alleged that Adams had in his possession $1,245.44 cash HOLC bonds and Federal Farm Mortgage bonds of a face value of $4,550; that defendant Altenbaumer was in possession of the box of silverware delivered to her before the death of Effie Brothers; that plaintiff Brothers was in possession of all the rest of the personal property and had refused to deliver it to defendant Adams on demand. The

answer further stated that Effie had died testate a resident of Rice county, and her will was duly admitted to probate.

The prayer of the answer and cross petition was that plaintiff take nothing by the action, and that Adams have judgment against the plaintiff for possession of the personal property then in the possession of the plaintiff or for its value in money.

In her separate answer Tillie Adams pleaded a general denial and prayed that her title and possession in the property assigned to Adams for her benefit be quieted. The answer of Mrs. Altenbaumer was of the same general nature.

In his reply Brothers alleged first a general denial. The reply then alleged that Adams had, up to the time of the action being filed, claimed by oral statements and by letter that he was the absolute owner of all the personal property of Effie and no other person had any title thereto; that these claims of Adams were inconsistent with the answer filed by Adams and he was estopped from claiming that the property was not claimed to be owned solely by him. The reply further alleged that the separate answers of Tillie Adams and Mrs. Altenbaumer, who were represented by the same counsel who represented Adams, had denied the execution of the instruments as set out in the petition of plaintiff; that by filing these answers Tillie Adams and Mrs. Altenbaumer had waived any claim they might have in the property of Effie. The reply also alleged that the purported will of Effie was alleged to have been signed on July 22, 1938, at which time Effie was in the hospital having a serious operation and that defendants fraudulently took advantage of her by inducing her to believe that her husband was not a faithful husband; that Effie, having undergone a serious operation on July 21, was on July 22 in a serious mental condition and did not know the legal effect of the instrument; that as a result of this fraud of defendants the purported will was caused to be signed with the fraudulent intent on the part of defendants to deprive plaintiff of his property and to give this property to two other people, both strangers to Effie.

The prayer of the reply was that Adams be estopped from setting up matters in regard to the ownership of the personal property of Effie inconsistent with the original claim of ownership; that Tillie Adams and Mrs. Altenbaumer be adjudged to have waived any claim they might have on the property, and that the purported last will of Effie, referred to in the answer, be set aside.

The action was a proper one to be submitted to the trial court, but a jury was qualified and sworn to act in an advisory capacity. The jury, after hearing the evidence and being instructed, answered special questions as follows:

"1. Did Effie E. Brothers at the time she executed the bill of sale marked 'Exhibit 17,' and the two assignments marked 'Exhibits 16 and 18,' understand the nature and extent of her property? A. No.

"2. Did she at the time she executed said instruments know and understand that she had a husband then living, to wit, Ira S. Brothers? A. Yes.

"3. Did Effie E. Brothers execute the bill of sale marked 'Exhibit 17' under undue influence exercised upon her by the defendants, or either of them, or anyone else in their behalf? A. Yes.

"4. If you answer question No. 3 'yes,' then state the name or names of the persons exercising such undue influence. A. Otto A. Adams.

"5. If you answer question No. 3 'yes,' then state what acts or statements or circumstances occurred which unduly influenced Effie E. Brothers in the execution of said statement. A. See enclosed answer.

"6. Did Effie E. Brothers execute the assignment of the bonds of the value of $4,550 to Otto A. Adams, marked 'Exhibit 16,' under undue influence exercised upon her by the defendants, or either of them, or anyone else in their behalf? A. Yes.

"7. If you answer question No. 6 'yes,' then state the name or names of the persons exercising such undue influence. A. Otto A. Adams, Tillie Adams, Mrs. C. Altenbaumer.

"8. If you answer question No. 6 'yes,' then state what acts or statements or circumstances occurred which unduly influenced Effie E. Brothers in the execution of said instrument. A. See enclosed answer.

"9. Did Effie E. Brothers execute the assignment of the East End Builders bonds to Otto A. Adams, marked 'Exhibit 18,' under undue influence exercised upon her by the defendants, or either of them, or anyone else in their behalf? A. Yes.

"10. If you answer question No. 9 'yes,' then state the name or names of the persons exercising such undue influence. A. Otto A. Adams, Tillie Adams, Mrs. C. Altenbaumer.

"11. If you answer question No. 9 'yes,' then state what acts or statements or circumstances occurred which unduly influenced Effie E. Brothers in the execution of said instrument. A. See enclosed answer."

The enclosed answer was as follows:

"'In answer to questions 5-8-11, we believe that Effie E. Brothers was influenced to make the assignments of property to Otto A. Adams which she would not have made if she had been in a normal state of mind. We believe that Effie E. Brothers was induced to go to Grace Hospital in Hutchinson, Kan., against the wishes of her family and against her own wishes had she been in a normal state of mind. Further that she had ample time in years past to arrange for disposal of the property in any manner she might have seen fit to do. That defendants did have many opportunities to influence Effie

E. Brothers to make certain assignments of property to Otto A. Adams and did take advantage of these opportunities and cause the assignment of property to Otto A. Adams.'"

The trial court adopted these findings and further found:

"From all of the facts and circumstances as shown by the evidence in the case that Effie E. Brothers did not intend to make and did not make a gift of all of her personal property as contended by the defendants and as set forth by purported written conveyances entered in this case as exhibits 16, 17, and 18, that Effie E. Brothers did not make a lawful delivery of said personal property, but continued to control and exercise dominion over said personal property, subsequent to the time of the alleged gift and until her death. The court further finds that the purported written conveyances from Effie E. Brothers to Otto A. Adams and marked as 'Exhibits 16, 17, and 18,' in this case are of no legal effect whatsoever, do not convey any interest or title in or to any part of said personal property, but are wholly null and void and shall be canceled and set aside."

The defendants filed motions to set aside certain of the answers and for judgment on the answers notwithstanding the general verdict and for a new trial. These motions were all overruled.

The first argument made by the defendants is that the trial court erred when it refused to enter a decree as prayed for by defendants for the reason that there were insufficient facts proven to establish mental incapacity or fraud and undue influence and because the evidence was convincing and conclusive that the transfers of personal property involved here were the voluntary acts of a mentally competent person.

The way the above argument is stated, to answer it in favor of the defendants would require this court to weigh conflicting evidence and to reach a different conclusion than was reached by the trier of the facts, that is, the trial court and the advisory jury. This we cannot do. (See *State, ex rel., v. Telephone Co.,* 115 Kan. 236, 223 Pac. 771; also, *Solomon v. Lampl,* 135 Kan. 469, 11 P. 2d 1028.)

The question is, Was there substantial, competent evidence to sustain the verdict of the jury and the findings of the trial court? On this point the rule stated in Thornton on Gifts and Advancements, ch. 16, § 454 *et seq.,* pp. 449-456, should be considered. There it is said:

"Evidence of direct influence used at the time the gift is made is not required. It is very often difficult to show by direct proof the undue influence, and direct evidence of the actual exercise of such influence is not expected. Oftentimes the means of keeping the influence out of sight are many and easy of application, and yet the result may be clearly seen. The fact of the in-

fluence exerted is very often gathered from all the circumstances attending the donor—his health, age, and mental condition, how far he was dependent upon and subject to the control of the person benefited, the opportunity which the donee had to exercise his influence, and the disposition of the donor to be subjected to it." (p. 449.)

This case is an apt one for the above rule.

It would not do to say that charges made in the petition here were not proven just because in the very nature of things there was no direct evidence available by which they might be proved.

In *Woodbury v. Woodbury*, 141 Mass. 329, 5 N. E. 275, in a somewhat similar case, the court said:

"It is often difficult to show by direct proof the undue influence, and direct evidence of the actual exercise of such influence can hardly be expected. Oftentimes the means of keeping the influence out of sight are many and easy of application, and yet the result may be clearly apparent. (*Delafield v. Parish*, 25 N. Y. 9, 96.)" (p. 332.)

In *Hutson v. Imperial Royalties Co.*, 134 Kan. 378, 5 P. 2d 825, this court held:

"The court correctly informed the jury that conspiracy as well as fraud may be proved by circumstantial evidence. While direct evidence may not be strong or complete in itself, yet when coupled and supplemented with circumstantial evidence it may be all that is necessary to support a proposition." (p. 387.)

See, also, *Adams v. Snyder*, 137 Kan. 365, 20 P. 2d 827.

There is another rule we must keep in mind when considering this case. The trier of the facts has the duty of drawing its own inferences and conclusions from the proven facts as long as these conclusions and inferences are reasonable ones. In *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215, this court held:

"In the solution of questions of fact dependent upon circumstantial evidence, the jury must be left to decide which of two equally plausible conclusions, deducible from such circumstances, shall be adopted." (Syl. ¶ 1.)

In *Bank v. Freeburg*, 84 Kan. 235, 114 Pac. 207, this court held:

"The jury and the court have the right to believe the circumstantial evidence and to disbelieve the direct evidence."

See, also, *Johnson v. Soden*, 152 Kan. 284, 103 P. 2d 812.

In *Stoner v. Wilson*, 140 Kan. 383, 36 P. 2d 999, this court quoted from 12 C. J. 635, as follows:

" 'But much discretion is left to the trial court in a case depending on circumstantial evidence, and its ruling will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact." (p. 392.)

We have announced the above rules many times. Keeping them in mind, we shall examine the record in this case to ascertain whether there was substantial, competent evidence to sustain the findings of the jury and the trial court.

We find evidence of an aged couple; that the elderly wife suddenly became ill and in need of medical attention; that two of the defendants who were not related to her, took her to a hospital away from her home and her husband without the consent of the husband. There is evidence that the defendants had access to the wife's room in the hospital just before she was to undergo a serious operation and just after the operation had been performed. That at times her husband and his children were excluded from the room. There is evidence that the defendants were carrying on negotiations with the wife at a time when she had not entirely recovered from the effects of the anaesthetic, and that defendants took pains that the nature of these negotiations should be concealed from plaintiff and his children. There is evidence that this elderly woman a short time before being taken to the operating room told her husband that she had all arrangements made for her property going where she wished it to go in event of her death. With this general situation then there is the evidence that deceased before she had recovered from the shock of the operation and before she had full possession of her faculties assigned all her personal property to a person who was not related to her and whom she scarcely knew before she entered the hospital. In this connection it should be observed that while Tillie Adams and Mrs. Altenbaumer had known Mrs. Brothers for some time these assignments were made to Otto Adams, a man she scarcely knew. There is evidence on behalf of the defendants that this property was conveyed to Otto Adams in trust. As we have noted, however, the jury and trial court were not obliged to believe this evidence. The defendants argue that these circumstances were all explained by their evidence and that their evidence required a conclusion other than that reached by the trial court and the jury. While the conclusion reached was not compelled by these circumstances, it cannot be said that it was not a reasonable conclusion nor that it was not supported by substantial, competent evidence.

Since we have reached the conclusion that the findings of the jury, to the effect that the assignments in question were secured by fraud and undue influence, were sustained by the evidence it is not

necessary for us to discuss the remaining questions argued by defendants other than some questions of evidence and of misjoinder of parties.

The next question we shall consider is the argument of defendants that their demurrer to the evidence of plaintiff should have been sustained because the action was brought against Adams, the trustee, and only two of the eight other beneficiaries of the trust, and against A. C. Mitchell and H. E. Moore, two of the beneficiaries under the will, thus bringing about a lack of indispensable parties. It should be noted here that there were eight other beneficiaries under the alleged trust besides Tillie Adams, Mrs. Altenbaumer, A. C. Mitchell and H. E. Moore, who were made parties after the action was commenced.

With regard to the former question, it should be noted that the action was against Adams because the assignments had been made to him and against Tillie Adams and Mrs. Altenbaumer because all three had participated in the fraud. The action was not to set aside a trust. At the time the action was filed under the theory of the petition and according to the testimony of the plaintiff, he knew nothing about any claimed trust relationship, but only knew that all the personal property of his deceased wife had been assigned to Adams and that Adams claimed it. The defendants pleaded the trust relationship in their answers, but did not at any time tender any issue that there was a misjoinder of parties or a defect of parties. This court said, in *Larimore v. Miller,* 78 Kan. 459, 96 Pac. 852:

"The question of a defect of parties defendant cannot be raised by a demurrer to the plaintiff's evidence; and where such a demurrer has been sustained, and this court on review is of the opinion that there was some evidence to support all the essential allegations of the petition, the ruling will be reversed, notwithstanding it may appear that a final judgment for the plaintiff could not rightfully have been rendered without the bringing in of additional parties." (Syl. ¶ 1.)

Note, also, in the same case—

"The defendant is personally concerned in resisting the plaintiff's demand. The question whether other persons were necessary parties was one proper to have been raised by answer. Not having been so raised, it was waived so far as the defendant could waive it." (p. 461.)

As to the argument that there was a misjoinder of parties because Moore and Mitchell were made parties defendant, the record discloses that the petition made no reference to a will, but the defend-

ant Adams pleaded in his answer that Effie Brothers had made a will, though asking no relief on account of it. The plaintiff in his reply pleaded that the will was void for the same reason that the assignments were void. The will bequeathed one-half the real, personal and mixed property of which the testatrix died possessed to plaintiff, one-half of a described tract of real estate to A. C. Mitchell and one-half of another described tract of real estate to H. E. Moore. Otto Adams was made executor. After this will was brought into the case by defendant Adams, plaintiffs by proper pleading asked that it be set aside and asked that Moore and Mitchell be made parties defendant. It appears that no service was had on either of them, one of them filed a pleading and did nothing further, and the other took no action at all. At any rate, the trial court refused to set aside the will and the will stands in full force and effect. Adams and the other defendants had no interest in the will except that Adams was named executor, which provision is still in effect. Under the circumstances, we cannot see how defendants Adams and Altenbaumer can complain that these men were made parties.

The next argument of defendants is that the action should have been dismissed after plaintiff had rested because plaintiff was not the real party in interest. The basis of this argument is that Brothers was the heir at law of Effie Brothers and brought this action while the administration of the estate was pending to recover personal property claimed to have been assigned and delivered by deceased during her lifetime. The argument is not good for the reason that the executor under the will was the person who plaintiff, the heir at law, claimed had obtained the assignments by fraud. Certainly the heir at law is not to be left without a remedy just because the person who should on account of his position as executor bring the action is the same person who should be sued. Ordinarily the executor or administrator is the proper party to bring an action with regard to the personal property of a deceased. However, heirs at law, next of kin, and legatees are allowed to maintain such actions in their own names when the administrator is insolvent, where his interests are antagonistic to those of the heirs, where he is guilty of fraud or collusion with the party to be sued or where he is unwilling or refuses to act. (See 21 Am. Jur. 940, § 1003.) (See, also, 23 C. J. 1193, § 426.) We have concluded that Brothers had a right to bring this action as a party plaintiff. However, when the matter was presented in the trial court Brothers asked the pro-

bate court to appoint a special administrator in the estate of Effie Brothers. This was done and the special administrator was made a party plaintiff, adopted the litigation up to that point and carried it on from there. The journal entry of judgment provided that the special administrator should recover the personal property on behalf of the estate. This was proper procedure, and we fail to see where defendants were prejudiced.

The defendants next argue that the trial court erred in refusing to admit in evidence the testimony of defendants Otto Adams and Mrs. Altenbaumer with reference to conversations and transactions had with the deceased. Adams was asked to state what Mrs. Brothers said to him at the time the assignments were made.

The plaintiff objected to this testimony because it concerned a conversation between the deceased and Adams in violation of G. S. 1935, 60-2804. This objection was sustained, and defendants argue that this was error. The record discloses that when the objection was sustained the defendants did not make an offer of Adams' testimony. The general rule has been stated as follows:

"As a general rule in order to reserve an available objection to the exclusion of evidence a proper question must be asked, and, on objection thereto, an offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all facts necessary to establish its admissibility." (3 C. J. 825, § 736.)

In *Jones v. City of Kingman,* 101 Kan. 625, 168 Pac. 1099, this court said:

"The requirement, that in order to preserve for review a ruling sustaining an objection to a question the party offering the evidence must at the time inform the trial court what was desired to be shown by the answer, is not dispensed with by the provision of the present code that rejected evidence to be available on appeal must be produced at the hearing of the motion for a new trial." (Syl. ¶ 4.)

It is true that this testimony was presented in affidavit form to the trial court on the argument of the motion for a new trial, but this was not enough. It was necessary that the offer of proof be made when the witness was presented at the trial. This conclusion renders it unnecessary to consider the question of whether the testimony was competent in the first place.

As to the testimony of Mrs. Altenbaumer, she was not present at the trial and no attempt was made to have her testimony there by way of deposition during the trial or before it commenced. There

was no showing that her testimony was newly discovered. Under such circumstances we hardly see how error can be predicated on her testimony.

The next point argued by defendants is that they were not given sufficient opportunity to introduce evidence to establish the good faith of the trustee. That question comes up this way. The oral trust agreement which Adams set out in his answer provided that certain property was to go to a Mrs. Fitzhugh in Texas. When Adams was on the stand he was asked what he had told Mrs. Fitzhugh about her interest in the property when he visited her. Plaintiff's objection to this evidence was sustained. Defendants did not make any offer at that time as to what they sought to prove by the witness. Following the rule already announced in this opinion, we hold that the failure of defendants to make this offer precludes them from complaining in this court of the exclusion of this testimony.

The next point argued by defendants is that the court erred in sustaining plaintiff's objection to testimony of the doctor who cared for Mrs. Brothers at the time the instruments in question were executed. No offer of proof was made, nor was the testimony furnished in the form of an affidavit at the hearing of the motion for a new trial. Hence the rule already spoken of precludes our examining it here. This rule also precludes our examination of the refusal of the trial court to permit defendants to establish by plaintiff the value of his property.

The next point argued by defendants is that the trial court erred in permitting plaintiff over the objection of defendants to testify that Mrs. Brothers was sometimes very much annoyed by Mrs. Altenbaumer's visits. Defendants argue that this was a matter about which only experts should be allowed to testify. Nonexpert witnesses are permitted to testify as to such matters. (See *State v. Stackhouse,* 24 Kan. 445; also, *State v. Baldwin,* 36 Kan. 1, 12 Pac. 318.)

Defendants next argue that the trial court erred in permitting Ira Brothers to testify about a communication with his wife. We have examined the record on this point and it discloses that Ira Brothers did not testify as to any communication or transaction between himself and deceased. He only testified as to what he heard and saw pass between deceased and other witnesses. Such testimony is competent. (See *Bertholf v. Cornel,* 132 Kan. 122, 294 Pac.

673.) The same argument is made by defendants as to testimony of the daughter and son of plaintiff about conversations had with deceased. Neither one of these witnesses are parties to the action and neither has any interest in the outcome of it. Their testimony was admissible. (See *Hall v. Wilson*, 121 Kan. 606, 249 Pac. 668; also, *Cadwalader v. Pyle*, 95 Kan. 337, 148 Pac. 655.)

· The next point argued by defendants is that witnesses were permitted to testify on immaterial matters. The testimony to which reference is made is that of a witness who testified that Mrs. Altenbaumer had told her while Mrs. Brothers was in the hospital that Mrs. Brothers wanted her to do some business and she had three banks to go to for her; that Mr. Brothers did not take care of Mrs. Brothers' business for her. It appears that this testimony was of some value to establish the activities of Mrs. Altenbaumer with reference to the property of Mrs. Brothers while she was in the hospital. The testimony was admissible.

Defendants next argue that the trial court erred in admitting improper evidence in rebuttal. Reference is made to the testimony of the cashier of the bank where Mrs. Brothers had her money deposited to the effect that at a time subsequent to the execution of the assignments several checks bearing Mrs. Brothers' signature were cashed at his bank. The issue of these assignments being valid gifts was put into the case by the defendants. This particular evidence was competent on that issue since it tended to contradict the story told by witnesses for defendants.

We find no error in this record and the judgment of the trial court is affirmed.