NEW JERSEY STATE BOARD OF OPTOMETRISTS AND JOHN J. BROWN, INSPECTOR, NEW JERSEY STATE BOARD OF OPTOMETRISTS, PLAINTIFF-RESPONDENT, v. WILLIAM M. LICHTMAN, O. D., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued August 23, 1954—Decided October 4, 1954.

Before Judges DAVIDSON, HUGHES and PINDAR.

*Mr. Robert W. Criscuolo* argued the cause for defendant-appellant (*Messrs. Parker, McCay and Criscuolo*, attorneys).

*Mr. William K. Miller*, Deputy Attorney-General, argued the cause for plaintiff-respondent (*Mr. Grover C. Richman, Jr.*, Attorney-General, attorney).

DAVIDSON, J. S. C. (temporarily assigned). This is an appeal by a licensed optometrist from the decision and order of the New Jersey State Board of Optometrists suspending

his license to practice for 30 days by reason of the violation of *N. J. S. A.* 45:12–11 and the rules of the Board duly promulgated thereunder.

Specifically, the Board found that appellant had violated the provisions of *N. J. S. A.* 45:12–11(*p*) (which prohibits solicitation in person or through an agent, or employing "solicitors" to obtain business) and *N. J. S. A.* 45:12–11(*s*) (which prohibits the violation of rule or regulation duly promulgated by the Board thereunder), by virtue of his violation of Rule No. 9 of the New Jersey State Board of Optometrists, which provides that:

"9.  Any statement, printed, written or oral, published, posted or circulated, directly or indirectly, by any person, firm, corporation, group or association, which quotes or specifies the name of any individual optometrist, firm or partnership of optometrists or any person, firm or corporation employing or having associated with him or it one or more optometrists, by way of especially recommending the professional services of the said optometrist, firm or corporation in conjunction with the announcement of the consummation of any contract, agreement or arrangement for professional services with the said optometrist, firm or corporation, in which announcement the said contract, agreement or arrangement may be purported to offer optometric services at a stipulated fee, or any variation of such a fee, or as being free, or at a fee which is presented to be smaller than ordinary fees or which purports to offer discounts or any other inducements or advantages to prospective recipients of such services, shall be *prima facie* evidence of soliciting through agents, within the meaning of section 45:12–11 (*p*) of chapter 12 of Title 45 of the Revised Statutes, on the part of the optometrist or optometrists so named, specified or involved, if such optometrist or optometrists are shown to be accessories to such contract, agreement or arrangement by satisfactory evidence of their providing or rendering optometric services in accordance with such contract, agreement or arrangement."

The Board further found that appellant had violated the provisions of *N. J. S. A.* 45:12–11(*o*) (which prohibits any conduct of a character likely to deceive or defraud the public) and *N. J. S. A.* 45:12–11(*s*) (which prohibits the violation of rule or regulation duly promulgated by the Board thereunder), by virtue of his violation of Rule No. 8(*B*)(2) of the New Jersey State Board of Optometrists, which provides that:

"8. (*B*) No optometrist shall cause or permit any listing of * * *
(2) any trade name or corporate name, or the name of any person, firm, corporation, partnership or association not licensed to practice optometry under the provisions of Chapter 12 of Title 45 of the Revised Statutes of New Jersey, in which additional listing the address and/or telephone number is the same as that of the said optometrist."

Appellant contends that the violation of the rule that an optometrist may not permit an unlicensed person to list his telephone number is unreasonable and insufficient to warrant a suspension under the facts presented, and that the evidence did not establish the granting of discounts and the solicitation of business through an agent.

Appellant admits, and it is established in the evidence, that he permitted a "Reading Group for Children," of which his wife is director, to list his home and office telephone numbers, but he maintains that this was occasioned by the fact that Mrs. Lichtman had been unable to obtain a telephone because of the national emergency, and that he discontinued the use when he was informed that it was a violation of the rules.

The evidence indicates that the dual listing of the telephones obtained for about six years; that appellant's office and the rooms of the reading group are on the ground floor of the same building, and the telephone rang in both places; that occasionally children in the group were requested by Mrs. Lichtman to have a visual screening or test by appellant or his associate, and that appellant, over the six-year period of the group's existence, had received some ten or twelve of the students as patients referred by their parents.

The power of the State Board of Optometrists to make rules is limited to the statutory authority given them by the Legislature. *Abelson's, Inc. v. New Jersey State Board of Optometrists*, 5 *N. J.* 412 (1950). The obvious purpose of *Rule* 8(*B*)(2), which prohibits an optometrist from permitting an unlicensed person to list his telephone number, is to assure direct contact with the patient and eliminate the possibility of obtaining patients indirectly or by reference

through guise or scheme by a layman or organization. Clearly, the rule is reasonable and proper under *N. J. S. A.* 45:12–11(*o*), which empowers the Board to suspend a license for "any conduct which is of a character likely to deceive or defraud the public," and the Board's finding of a violation of both statute and rule is amply justified in the evidence.

Appellant's further contention is that the evidence before the Board did not support its finding that he either gave a discount or solicited business through an agent. It appears from the evidence that the investigation which resulted in the charges against Dr. Lichtman was initiated by one Dr. Robbins—himself an optometrist—who called Marie Ruth Miller, a professional investigator, on the telephone, made an appointment, and gave her one of appellant's business cards with the notation "L. Jones Local 80" on the back.

The case against appellant rests solely upon the testimony of the investigator and a companion, Ethel Palmer, who accompanied her on a visit to Dr. Lichtman's office after making an appointment by telephone. There the investigator gave her name, address and place of employment, had her eyes examined, selected frames and agreed with the doctor upon a price of $31.50 for the examination and two pairs of glasses. The investigator then presented the card given to her by Dr. Robbins and asked for a discount, and, according to the testimony, Dr. Lichtman accepted the card and said that he had already allowed for the discount that he gave all the local union, she having told him she was an employee of the Campbell Soup Company.

She further testified that when she asked the amount of the allowance, the doctor said that he was not free to discuss it, produced the rules and regulations of the Board, and told her it was against the law to give a discount.

Mrs. Palmer's testimony was to the same effect as that of Mrs. Miller and constituted the entire case against the doctor, aside from his own statement that he had treated 15 or 20 union members, of whom perhaps two had told him they had been referred by some one in the union office, who said they would get a discount.

██ Optometry is not a mere trade or craft (*Abelson's, Inc. v. New Jersey State Board of Optometrists, supra*), and is declared a profession in *N. J. S. A.* 45:12–1. A licensed optometrist is a member of a profession and his practice must comport with the standards of behavior set forth in the statute regulating his profession and the rules duly promulgated thereunder.

Any professional man is traditionally vulnerable to attack and a charge of professional misconduct which may result in suspension of his license to practice is of grave import, for his good name and reputation constitute his most precious asset.

In all fairness to the defendant and the Board charged with determining the fact, it would seem that the investigation of charges preferred should be full and complete, to the end that all available proofs be disclosed. In the instant case the investigation, or at least the result thereof, seems to have been insufficient on the charge under Rule 9, as there was no evidence of the origin of Dr. Lichtman's business card, nor does there appear to have been any effort to produce the L. Jones whose name was noted on the back, although both circumstances are most important items of proof. Certainly, if there was a discount agreement or the solicitation of business through an agent, then L. Jones, inferentially at least, the other contracting party, was an essential witness.

How the card was secured, the circumstances under which Jones' name was affixed, his or her identity and connection with the union, indeed, whether there even is a Jones—these are all fundamental questions left unanswered.

██ The evidence before the Board was insufficient to support its finding of a violation of Rule 9, for it failed to establish any circulation of an announced agreement or offer of a discount, and the proofs likewise failed to establish solicitation through an agent in violation of *N. J. S. A.* 45:12–11(*p*).

The determination of the Board, accordingly, will be affirmed as to the violation of *N. J. S. A.* 45:12–11(*o*), (*s*) and *Rule* 8(*B*)(2) and reversed as to the violation of *N. J. S. A.* 45:12–11(*p*) and *Rule* 9.

In order to permit either the Board or counsel to take such further action as may be deemed necessary or advisable in view of our determination, no mandate shall issue for a period of 30 days.