427 P.2d 126

The STATE of Arizona ex rel. BOARD OF OPTOMETRY, Appellant,

v.

SEARS, ROEBUCK & CO., a corporation, and C. G. Clare, Appellees.

No. 8026.

Supreme Court of Arizona, In Division.

May 3, 1967.

The appellant, herein referred to as Board, sought to enjoin the appellee, herein referred to as Sears, from engaging in the unlawful practice of optometry under the authority of A.R.S. § 32–1758.

The trial court after hearing evidence offered by the Board sustained a motion by Sears denying the injunction, and entered the following conclusions of law: "1. At no time stated herein has defendant Sears, Roebuck & Co. been engaged, nor is it now engaged, in the practice of optometry." "2. The relationship between defendant Sears, Roebuck & Co. and C. G. Clare has at all times stated herein been, and is now, that of landlord and tenant, and not that of employer and employee, or master and servant." "3. The practice of optometry by a licensed optometrist as a tenant of a corporation operating a retail establishment at the same premises is not prohibited by the provision of A.R.S. § 32–1758, nor is it otherwise prohibited by law." "4. A corporation operating a retail store selling general merchandise to the public is not prohibited by law from leasing space in said store to a licensed optometrist and it is not thereby engaged in 'the practice. of optometry' within the meaning of [the statute]."

The evidence shows that Sears and Dr. Clare entered into a one year lease about the time the new Sears store in Phoenix was opened May 1962, on rental terms of twenty percent of Dr. Clare's sales, repair work and services. Sears retained the right to audit and inspect Clare's books. If Clare extended credit, it was done after Sears' approval and the accounts were assigned to Sears without recourse. Clare was at liberty to use, and did use, Sears' advertising department and some of his ads appeared in the regular Sears advertisements. All of his advertisements were billed to Sears at their reduced rate, Sears paid for them, and were thereafter reimbursed by Clare. The various Sears directories throughout the store listed an optometric department in the basement. Dr. Clare was entitled to use the leased premises during regular

Darrell F. Smith, Atty. Gen., Jerry W. Lawson, Asst. Atty. Gen., John E. Madden, Sp. Asst. Atty. Gen., Phoenix; John S. Schaper, Sp. Asst. Atty. Gen., Phoenix, for appellant.

Evans, Kitchel & Jenckes, Newman R. Porter, Phoenix, for appellee Sears, Roebuck & Co.

Lewis Roca Scoville Beauchamp & Linton, Walter Cheifetz, Phoenix, for appellee C. G. Clare.

BERNSTEIN, Chief Justice.

This is an appeal from a decision of the Superior Court of Maricopa County, denying a preliminary injunction.

store hours. He and his employees were entitled to the same discount given all regular Sears employees. His professional phone was an extension of the regular Sears phone and his calls were taken by Sears personnel. By the terms of the lease, Clare was required to carry Employees' Liability Insurance, Public Liability Insurance and Malpractice Insurance in amounts and with provisions satisfactory to Sears and adequate to protect and indemnify them.

The Board contends the trial court erred in ruling that Sears is not engaged in the practice of optometry without a license. The basis of appellant's contention is that Sears, through a lease arrangement, utilized the professional services of Dr. C. G. Clare, a registered optometrist, for its customers and that he was therefore, unlawfully in the employment of Sears.

The practice of optometry in this state is defined by statute:

"A.R.S. § 32–1701.

3. 'Practice of optometry' means the examination and refraction of the human eye and its appendages, and the employment of any objective or subjective means or methods other than the use of drugs, medicine or surgery, for the purpose of determining any visual, muscular, neurological or anatomical anomalies of the eye, the use of any instrument or device to train the visual system or correct any abnormal condition of the eye or eyes and the prescribing, fitting or employment of any lens, prism, frame or mountings for the correction or relief of or aid to the visual function."

■ Under A.R.S. § 32–1701 et seq. it is clear a corporation cannot practice optometry. Being a fictitious person created by state charter, a corporation does not possess the necessary moral and intellectual qualities demanded by the professional practice of this healing art. Nor can an unlicensed corporation practice optometry through employing a licensed optometrist, or through entering into any type of arrangement with a licensed optometrist which subjects the optometrist to the corporation's direction and control. Funk Jewelry Co. v. State of Arizona ex rel. La Prade, 46 Ariz. 348, 50 P.2d 945 (1935); State v. Kindy Optical Company, 216 Iowa 1157, 248 N.W. 332 (1933); State ex rel. Fatzer v. Zale Jewelry Co., 179 Kan. 628, 298 P.2d 283 (1956); Sears, Roebuck & Co. v. State Board of Optometry, 213 Miss. 710, 57 So.2d 726 (1952).

■ We have examined this lease and find it is not illegal or against public policy, nor does it create an employer-employee relationship between Clare and Sears. Certainly a corporation can lease a portion of its property to an optometrist without thereby being considered to be engaged in the practice of optometry, and the fact that the rental consideration was a percentage of total net sales is not only not illegal, but as we understand it, a rather common modern mode of measuring the value of rental property. The Board concedes that it is not unlawful for an optometrist to assign his accounts receivable; and we believe that it is nothing more than sound business practice for Sears to require indemnifying insurance against the possibility that some third person might name them as a party defendant in some future action against Clare for purported wrongs committed during his occupancy of the leased premises.

Since this court decided the Funk case, supra, in 1935 the cases across the nation have been legion in what constitutes an engagement in the practice of optometry, and the subject has been annotated in A.L.R. numerous times, 102 A.L.R. 343, 121 A.L.R. 1455, 128 A.L.R. 585, 141 A.L.R. 883 and 88 A.L.R.2d 1290.

As pointed out in 88 A.L.R.2d 1290 "Decisions holding that unlicensed persons or corporations who employ, or have lease arrangements with, licensed optometrists or physicians, are in fact practicing optometry, generally hold to the theory that optometry is a "learned" profession, similar to medicine, dentistry, or law, or, in the case of an alleged lease arrangement, find

that the exercise of control is such that the arrangement is really one of employer-employee and not one of lessor-lessee * * *", wherein those cases holding that unlicensed persons or corporations are not in fact practicing optometry, generally reject the theory that optometry is a "learned" profession, placing it more in the category of a trade or vocation.

In the Funk case, supra, we likened optometry to dentistry and said they "both belong to the healing arts", and thereby strongly inferred that optometry is a profession "having to do with public health" and to that end the state requires that the relation of the optometrist to his patients "must be personal"; and further, that the practice of optometry "is not open to commercial exploitation." 50 P.2d pages 945, 946.

We reaffirm our holding in Funk, supra, but both in its light and that of the many cases on this subject from other jurisdictions we feel that none of the facts set out above, taken alone or in their aggregate constitute an engagement in the practice of optometry as defined by A.R.S. § 32–1701. Nor do they exhibit that the arrangement between Sears and Clare created an employment relationship. Sears has no control over the professional activities of the optometrist. Clare is free to order his supplies from whomever he pleases; free to come and go as he wishes; free to make his own professional examinations in his own manner and to make such charges for his examinations and glasses as he deems reasonable. He selects his own equipment, settles his own controversies with his patients, and maintains his own records. The record is clear that Dr. Clare conducted his optometry practice independently and free from the exercise of any control whatever by Sears. We find nothing in the relationship between Dr. Clare and Sears which violates the provisions of A.R.S. Title 32, Chapter 16.

The appellant has raised several procedural questions and requested that we rule upon them as an adjunct of this appeal.

In keeping with our usual practice, we will not indulge in questions unnecessary to the determination of the appeal.

Judgment affirmed.

UDALL and LOCKWOOD, JJ., concur.