719 A.2d 713

PETER VERNIERO, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF–APPELLANT, v. BEVERLY HILLS, LTD., INC., A/K/A BEVERLY HILLS MARKETING, INC., AND JONATHAN NICHADOWICZ, AS SOLE PRINCIPAL OF BEVERLY HILLS LTD., INC., A/K/A BEVERLY HILLS MARKETING, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 19, 1998—Decided November 10, 1998.

Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.

*Peter Verniero,* Attorney General, attorney for appellant (*Jeffrey Burstein,* Senior Deputy Attorney General, of counsel; *Carol G. Jacobson,* Deputy Attorney General, on the brief).

No brief was filed on behalf of respondents.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether a corporation which produces documents in compliance with an administrative subpoena issued by the Attorney General under the Consumer Fraud Act, *N.J.S.A.* 56:8-1 to -20, is entitled to absolute immunity from any criminal prosecution arising out of and related to the subject matter of the administrative proceedings.

The Attorney General, acting in his capacity as attorney for the Division of Consumer Affairs (Division), served an administrative subpoena upon defendant Beverly Hills Ltd., Inc. (Beverly Hills), directing it to produce certain business records, including advertisements and/or solicitations of consumers, marketing agreements with other companies and documentation pertaining to its corporate status. This subpoena was issued in connection with an investigation into advertisements, solicitations and other commercial practices used by Beverly Hills in marketing and selling goods and services. In response, Beverly Hills' attorney, on behalf of the corporation and its principal, defendant Jonathan Nichadowicz, sent a letter to the Attorney General which asserted that his clients were entitled to "exemption from both civil and criminal punishment in the event demanded documents would in any way result in self incrimination," and demanded such immunity "prior to the turnover of any documents." The Attorney General replied by a letter which stated that Beverly Hills has no privilege against self incrimination with respect to its business records and insisted upon compliance with the subpoena. Defendants' counsel responded by a second letter which reaffirmed his clients' position that they were entitled to immunity with respect to any documents produced in response to the subpoena.

The Attorney General then filed this action to enforce compliance with the subpoena. The matter was brought before the trial court by an order to show cause. After hearing argument, the court issued a brief oral opinion which concluded that *N.J.S.A.* 56:8–7 provides absolute immunity from any criminal prosecution arising out of or related to administrative proceeding in connection with which a subpoena has been issued. Accordingly, the court entered a final judgment which provides in pertinent part:

> If the Attorney General fails to withdraw his administrative subpoena or subsequent to withdrawal he renews his demand for corporate documents, and Beverly Hills complies with such non-withdrawn or renewed request, Beverly Hills shall be exempt from being prosecuted or subjected to any penalty or forfeiture in any criminal proceeding which arises out of and relates to the subject matter of the administrative proceeding pursuant to *N.J.S.A.* 56:8–7, *without having to make a*

*showing that the production of the corporate documents by the corporation may tend to incriminate the corporation.*

(Emphasis added.)

We reverse.

The subpoena for the production of Beverly Hills' records was issued pursuant to *N.J.S.A.* 56:8–4, which authorizes the Attorney General to issue subpoenas "[t]o accomplish the objectives and to carry out the duties prescribed by [the Consumer Fraud Act]." In refusing to comply with this subpoena unless it was granted immunity from prosecution, Beverly Hills invoked *N.J.S.A.* 56:8–7, which provides in pertinent part:

If any person shall refuse to testify or produce any book, paper or other document in any proceeding under this act for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him, convict him of a crime, or subject him to a penalty or forfeiture, and shall, notwithstanding, be directed to testify or to produce such book, paper or document, he shall comply with such direction.

*A person who is entitled by law to,* and does *assert such privilege,* and who complies with such direction shall not thereafter be prosecuted or subjected to any penalty or forfeiture in any criminal proceeding which arises out of and relates to the subject matter of the proceeding.[1]

(Emphasis added.)

By its terms, *N.J.S.A.* 56:8–7 only provides immunity from prosecution to "[a] person who is entitled by law to ... assert [the] privilege [against self-incrimination.]" Therefore, the determination whether defendants would be entitled to immunity from prosecution if they complied with the subpoena turns on whether the privilege applies to Beverly Hills' business records.

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled to be a witness against himself." Although the New Jersey Constitution does not contain a similar privilege, New Jersey has a common law privilege against self-incrimination which is now codified in the rules of

---

[1] We note that other regulatory statutes contain substantially similar provisions. *N.J.S.A.* 45:1–20 (Professional and Occupational Boards Uniform Enforcement Act); *N.J.S.A.* 45:17A–33(h) (Charitable Registration and Investigation Act); *N.J.S.A.* 52:13C–36(d) (Legislative Activities Disclosure Act).

evidence. *N.J.S.A.* 2A:84–17 to –19 (N.J.R.E. 501 to 503); see *In re Grand Jury Proceedings of Guarino,* 104 *N.J.* 218, 229–30, 516 *A.*2d 1063 (1986). It is firmly established that a corporation may not invoke either the Fifth Amendment or the New Jersey privilege against self-incrimination. *Braswell v. United States,* 487 *U.S.* 99, 105, 108 *S.Ct.* 2284, 2288, 101 *L.Ed.*2d 98, 106 (1988); *Hale v. Henkel,* 201 *U.S.* 43, 74–75, 26 *S.Ct.* 370, 378–79, 50 *L.Ed.* 652, 665–66 (1906); *Woodward–Clyde Consultants v. Chemical & Pollution Sciences, Inc.,* 105 *N.J.* 464, 474–75, 523 *A.*2d 131 (1987); *Guarino, supra,* 104 *N.J.* at 232–33, 516 *A.*2d 1063; *Board of Health of Township of Weehawken v. New York Cent. R.R. Co.,* 10 *N.J.* 284, 288–89, 90 *A.*2d 736 (1952). Moreover, a custodian of corporate records may not rely upon his or her personal privilege against self-incrimination as a basis for refusing to produce corporate records. *Braswell, supra,* 487 *U.S.* at 105–19, 108 *S.Ct.* at 2288–96, 101 *L.Ed.*2d at 106–15.[2]

Beverly Hills is admittedly a corporation, and the subpoena issued by the Division only sought the production of Beverly Hills' records. Therefore, it is clear that neither Beverly Hills nor Nichadowicz could invoke the Fifth Amendment or the New Jersey privilege against self-incrimination incorporated in *N.J.S.A.* 2A:84–17 to 19 as a basis for refusing to produce the records.

■ Nevertheless, the trial court concluded that *N.J.S.A.* 56:8–7 provides a more expansive immunity from a prosecution arising out of or related to the subject matter of the compelled production of corporate documents than is mandated by the Fifth Amendment or *N.J.S.A.* 2A:84–17 to 19. The court stated, without

---

2 In *Braswell,* the Court also held that "in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." *Id.* at 118, 108 *S.Ct.* at 2295, 101 *L.Ed.*2d at 114. However, this part of the *Braswell* decision simply imposes a limited restriction upon the admissibility of evidence of a corporate custodian's compliance with a subpoena for records. It does not establish any form of immunity from prosecution. Therefore, it is irrelevant to this action seeking a corporation's compliance with a subpoena for its records.

further explanation, that *N.J.S.A.* 56:8–7 is "a legislative enact-
ment superimposed upon a criminal common law privilege." We
discern no basis in the language of *N.J.S.A.* 56:8–7 or the policies
of the Consumer Fraud Act for this conclusion.

*N.J.S.A.* 56:8–7 does not itself provide any immunity
from prosecution with respect to the compelled production of
documents or testimony; it only confers immunity upon a person
who is "entitled by law to ... assert [the] privilege" against self-
incrimination. Thus, a person claiming immunity under *N.J.S.A.*
56:8–7 must identify some "law" other than *N.J.S.A.* 56:8–7 as the
source of a privilege against self-incrimination. By construing
*N.J.S.A.* 56:8–7 to provide immunity from prosecution to a party
who is not entitled to invoke the privilege against self-incrimina-
tion, the trial court effectively read the words "entitled by law to
... assert such privilege" out of the statute. However, it is a
fundamental principle of statutory interpretation that a court
"should try to give effect to every word of the statute, and should
not assume that the Legislature used meaningless language."
*Medical Soc'y of N.J. v. New Jersey Dep't of Law & Pub. Safety,*
120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990). Therefore, *N.J.S.A.* 56:8–7
must be read to provide immunity from prosecution solely to a
person who is entitled to assert the privilege against self-incrimi-
nation under the Fifth Amendment or *N.J.S.A.* 2A:84–17 to –19.

Moreover, the trial court's interpretation of *N.J.S.A.* 56:8–7
would undermine enforcement of the Consumer Fraud Act. Be-
cause a corporation or custodian of corporate records cannot
invoke the privilege against self-incrimination as a basis for refus-
ing to produce documents relevant to a criminal investigation, the
Attorney General would be faced with a dilemma if his investigato-
ry powers under the Consumer Fraud Act were circumscribed by
a more expansive immunity from criminal prosecution than applies
in a criminal investigation. He would be compelled either to delay
issuance of a subpoena for the production of documents which may
be needed to seek injunctive relief to prevent continuation of sales
practices which violate the Consumer Fraud Act or to immunize

the corporation and its principals from criminal prosecution by issuing the subpoena. Such an interpretation of *N.J.S.A.* 56:8–7, which would force the Attorney General to choose at the outset of an investigation whether to pursue civil or criminal remedies with respect to conduct that may violate both the Consumer Fraud Act and criminal statutes, would be inconsistent with the legislative intent "to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public." *Kugler v. Romain,* 58 *N.J.* 522, 537, 279 *A.*2d 640 (1971).

Accordingly, the judgment of the trial court is reversed and the case is remanded to the trial court for the entry of an order compelling Beverly Hills to produce the subpoenaed documents.