775 A.2d 629

IN RE ADOPTION OF N.J.A.C. 13:38–1.3(F) BY THE
STATE BOARD OF OPTOMETRISTS.

Superior Court of New Jersey
Appellate Division

Argued May 30, 2001—Decided June 29, 2001.

Before Judges PRESSLER, CIANCIA and ALLEY.

*William Harla*, argued the cause for appellant, (*Decotiis, Fitzatrick, Gluck, Hayden & Cole*, attorneys; *Mr. Harla*, of counsel; *Gregory J. Bevelock*, on the brief).

*Carmen A. Rodriguez*, Deputy Attorney General, argued the cause for respondent, (*John J. Farmer, Jr.*, Attorney General, attorney; *Andrea M. Silkowitz*, of counsel; *Ms. Rodriguez*, on the brief).

The opinion of the court was delivered by

ALLEY, J.A.D.

Lenscrafters appeals from the adoption of an administrative rule by the State Board of Optometrists, in particular, *N.J.A.C.* 13:38–1.3(f). We hold that the regulation is contrary to the statute that purportedly authorized it and thus is invalid.

The Legislature has recognized optometry as a profession. *N.J.S.A.* 45:12–1. In a case we decided seventeen years ago, *Matter of Kaufman,* 194 *N.J.Super.* 124, 476 *A.*2d 319 (App.Div. 1984), we were concerned with charges that two optometrists were practicing their profession in violation of *N.J.S.A.* 45:12–11(u). We concluded that they were not. In our decision, we observed,

Some history of the conflict between optometrists and opticians may be found in *New Jersey Optometric Assn. v. Hillman–Kohan,* 144 *N.J.Super.* 411, 365 *A.*2d 956 (Ch.Div.1976), *aff'd* 160 *N.J.Super.* 81, 388 *A.*2d 1299 (App.Div.1978). A source of tension between the two groups is that each is separately permitted to fabricate eyeglasses. This results in the potential for economic competition between the opticians and the optometrists.

[194 *N.J.Super.* at 127, 476 *A.*2d 319].

The operation in this area of "conflict" and "tension" continues, and their manifestations include the adoption of and challenge to the regulation now before us.

Some background concerning *Kaufman* is appropriate. There, optometrists had a practice functioning as a department in a commercial building. Their practice was adjacent to an optician's facility in the same building, and the optician was the landlord of the optometrists. The only two operations in the building were those of the optician and the optometrists. The optometrists paid rent based on a percentage of gross receipts. A statute then in effect, but since repealed, *N.J.S.A.* 45:12–11(u), prohibited the following:

Practicing optometry in any retail or commercial store or office not exclusively devoted to the practice of optometry or other health care professions where materials or merchandise are displayed pertaining to a business or commercial undertaking not bearing any relation to the practice of optometry or other health care professions; providing, however, that any optometrist practicing in premises of this type prior to January 1, 1963, shall be permitted to continue in his present location; but when and if any optometrist, who is a lessee or an employee of a lessee, vacates such premises no other optometrist shall be permitted to practice in said vacated premises. Practicing optometry under a false or assumed name, or upon a salary, commission, or any other basis of compensation, while directly or indirectly employed by or associated or connected as an optometrist with any person, association or corporation other than one who possesses a valid unrevoked certificate of registration as an optometrist or a physician licensed in and for the State of New Jersey and who has an actual legal residence within the State.

The State Board of Optometrists found that these optometrists had violated prohibitions of the statute. We disagreed, strictly construing the statute because we considered it generally penal in nature. *Kaufman, supra,* 194 *N.J.Super.* at 132–33, 476 *A.*2d 319. We rejected the Board's contention that there must be a physical separation between the establishments of an optometrist and an optician, found that they may be located within the same facility, adjacent to each other, and determined that an optometrist in that situation could dispense eyeglasses from his own office. We also set aside the Board's finding that appellants had violated *N.J.S.A.* 45:12–11(u)'s prohibition against "practicing optometry ... on a salary, commission or any other basis of compensation, while directly or indirectly employed by or associated or connected as an optometrist with any person, association or corporation other than one who holds a valid unrevoked certificate of registration as an optometrist ..." *Id.* at 135, 476 *A.*2d 319. We concluded,

> The record does not support the Board's determination that appellants receive compensation from Eyelab. Indeed, the record establishes that appellants pay rent to their landlord, the opticians. We have considered the fact that appellants make use of the equipment, located on the rental premises in the additional space on the bottom floor of the building. That evidence is not sufficient to establish a violation of this penal statute.

> Neither the existence of the landlord-tenant relationship here nor the use of the same advertising agency, similar logos or the same hours of operation compel an inference of "oneness." The Board's assertion of a violation of the statutory proscription is not supported by competent proof. We conclude that there is no sustainable basis for the Board's determination, and that it must be set aside as arbitrary, capricious and unreasonable. *In re Suspension of Heller,* 73 *N.J.* 292, 309, 374 *A.*2d 1191 (1977) and *Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

> [*Ibid.*]

As opposed to the procedural posture in *Kaufman,* which was an appeal from the Board's finding that optometrists had violated statutory prohibitions, this appeal is from the Board's adoption of a regulation, which the Board asserts was done pursuant to statute. The statute that the Board invokes as authority for the regulation became effective in 1992, well after the *Kaufman* decision, and reads as follows:

*N.J.S.A.* 45:12–9.12. *Practice of optometry at retail store or office permitted if identified as independent doctor; outside control or interference with practice prohibited*

Notwithstanding any other provision of law to the contrary, an optometrist shall not be prohibited from practicing optometry at a rented location in a retail or commercial store or office or ophthalmic dispenser's office, provided the optometrist is identified as an independent doctor of optometry; and, provided further, that the landlord or any officer, employee or agent of the landlord or any other person who does not possess a valid certificate of registration as an optometrist or physician in this State shall not directly or indirectly control, influence, interfere with or supervise the professional judgment of the optometrist in the practice of optometry, including' but not limited to, the level or type of care or services rendered or the professional fees charged therefor, except as otherwise provided by P.L.1969, c. 232 (C. 14A:17–1 et seq.).

█ This statute forms part of a broader enactment, the Consumer Access to Eye Care Act of 1991, *codified at N.J.S.A.* 45:12–1, 45:12–9.8 to –9.12 (the Act). In contrast with prior legislation, which focused on ensuring a high standard of care, *see Abelson's Inc. v. N.J. State Board of Optometrists,* 5 *N.J.* 412, 420–421, 75 *A.*2d 867 (1950), an apparent aim of the Act is promoting increased access to eye care by authorizing optometrists to receive training, testing, and certification to utilize and prescribe a variety of medications whose prescription previously had not been within their province. *See N.J.S.A.* 45:12–9.8 to 9.11.

The Act also permitted optometrists to practice in settings that had previously been prohibited. Optometrists formerly had been forbidden from practicing within a store "not bearing any relation to the practice of optometry," *N.J.S.A.* 45:12–11(u) (repealed), such as, for example "a general department store or a jewelry store," *Kaufman, supra,* 194 *N.J.Super.* at 124, 476 *A.*2d 319. In contrast, the Act permits an optometrist, subject to specified conditions, to practice optometry "at a rented location in a retail or commercial store." *N.J.S.A.* 45:12–9.12.

This new right-to-rent provision in the Act is an entirely different statute than the one examined in *Kaufman, supra,* which has been repealed. The result in *Kaufman,* while informative and useful, does not determine the validity of the adoption of the administrative regulation that is before us. The Act makes it

clear that an optometrist is not prohibited from engaging in his or her profession "at a rented location in a retail or commercial store or office . . . ," subject to specified conditions, only the last of which allegedly is before us in this matter, namely the prohibition that the landlord "shall not directly or indirectly control, influence, interfere with or supervise the professional judgment of the optometrist in the practice of optometry . . . ." *N.J.S.A.* 45:12–9.12.

We now examine the regulation before us in this appeal in order to determine Lenscrafters' challenge to its validity. This regulation, *N.J.A.C.* 13:38–1.3(f), provides as follows:

> Optometrists shall not participate in any arrangement or agreement, with any person other than an associate, whereby any remuneration received by that person in payment for the provision of space, facilities, equipment, products, drugs, personnel, marketing or management services used by the optometrists is to be determined or calculated as a fixed percentage of, or otherwise dependent upon, the income or receipts derived from the practice of optometry. Nothing in this subsection shall preclude an optometrist from entering into a bona fide profit sharing plan or retaining the services of a collection agency.

The record reflects that this regulation was proposed in 1999, and that the Board received five written comments about the proposed regulation, two of which addressed section (f), which is before us on this appeal. One comment objected to the provision as inconsistent with the statute and the other contended that it was contrary to our decision in *Kaufman*. The Board rejected these objections and adopted the rules on March 29, 2000. Because in August of that year "sunset" requirements were scheduled to cause all the Board's regulations in *N.J.A.C.* 13:38 to expire, the Board proposed the readoption of its regulations on July 3, 2000. 32 *N.J.R.* 2370. In response to the proposed re-promulgation, the Board again received five comments, two of which were similar to the arguments received with respect to the original proposal. The Board adopted *N.J.A.C.* 13:38 on August 8, 2000, effective September 18, 2000, and published its comments at 32 *N.J.R.* 3446 on September 18, 2000.

We accord considerable weight and deference to the agency's construction of a statute it administers and to the agen-

cy's expertise, and an agency's regulations are presumed valid. *New Jersey Educ. Ass'n v. Board of Trustees, Public Employees' Retirement System,* 327 *N.J.Super.* 326, 332, 743 *A.*2d 353 (App. Div.2000). Nevertheless, we will sustain a challenge to a regulation that plainly is not supported by the statute which it is to implement, and thus legislatively is not authorized, *Matter of Adoption of Amendments to N.J.A.C. 6:28–2.10, 3.6 and 4.3,* 305 *N.J.Super.* 389, 402, 702 *A.*2d 838 (App.Div.1997), and we will also do so if the regulation is arbitrary, unreasonable, or capricious. *New Jersey State League of Municipalities v. Dept. of Cmty. Affairs,* 158 *N.J.* 211, 222, 729 *A.*2d 21 (1999).

Generally, "[t]he power of the State Board of Optometrists to make rules is limited to the statutory authority given them by the Legislature." *New Jersey State Bd. Of Optometrists v. Lichtman,* 32 *N.J.Super.* 278, 281, 108 *A.*2d 289 (App.Div.1954). The powers granted to the Board are "for the protection of the public against ignorance and incapacity and deception and fraud." *Abelson's, supra,* 5 *N.J.* at 419, 75 *A.*2d 867. The Board's actions, like those of any administrative agency, are entitled to "a presumption of reasonableness," and "the party who challenges the validity of that action has the burden of showing it was arbitrary, unreasonable or capricious." *Boyle v. Riti,* 175 *N.J.Super.* 158, 166, 417 *A.*2d 1091 (App.Div.1980). *See also, New Jersey Educ. Ass'n, supra,* 327 *N.J.Super.* at 332, 743 *A.*2d 353.

We recognize that the imposition of some limits upon an optometrist's permissible rental arrangements is consistent with the legislative goal of "ban[ning] practices and procedures tending to ... the lowering of the standards of service" and "protection of the public against ... deception and fraud." *Abelson's, supra,* 5 *N.J.* at 420–421, 75 *A.*2d 867. We must keep in view the alleged evil that the regulation is aimed at controlling, here, revenue-based rent agreements.

We conclude that the regulation before us is invalid as being plainly not authorized by the statute, because it bans revenue-

based rent in contexts that the statute itself never authorized or even addressed.

The statute, *N.J.S.A.* 45:12–9.12, generally permits "practicing optometry at a rented location in a retail or commercial store," and only within that context does it forbid an arrangement in which a landlord is able to "directly or indirectly control [or] ... influence ... the professional judgment of the optometrist in the practice of optometry." The regulation, however, would bar optometrists generally from entering into any agreement with

> any person other than an associate, whereby any remuneration ... for the provision of space ... [or] facilities ... used by the optometrists is to be determined or calculated as a fixed percentage of, or otherwise dependent upon, the income or receipts derived from the practice of optometry.

The regulation is silent about the relevant factor that the statute sets forth as the express predicate for the regulation of rental arrangements, namely, that the arrangement exists with one who is able to "directly or indirectly control, influence, interfere with or supervise the professional judgment of the optometrist in the practice of optometry." In our view, this leads to two possible interpretations of the Board's view of the statute, and each utterly lacks any rational basis.

The first interpretation is that the Board considered that Legislature's intent was to ban all leasing of space by optometrists on a percentage of revenue basis. There is no authority for such a view, however, and it lacks a rational basis because the Legislature has done the opposite. It has provided, with specified exceptions, that

> an optometrist shall not be prohibited from practicing optometry at a rented location in a retail or commercial store or office or ophthalmic dispenser's office, provided the optometrist is identified as an independent doctor of optometry....

[ *N.J.S.A.* 45:12–9.12.]

The specified exception that is relevant here is just that, an exception to the general right to lease created by *N.J.S.A.* 45:12–9.12, namely, the prohibition on leasing when the landlord is able to "directly or indirectly control, influence, interfere with or

supervise the professional judgment of the optometrist in the practice of optometry...."

The other possible interpretation is that the Board considered the mere existence of a percentage leasing arrangement *ipso facto* to constitute the prohibited "control" or "influence." This approach is also flawed. It would render superfluous the statutory condition, "directly or indirectly control, influence, interfere with, or supervise the professional judgment of the optometrist in the practice of optometry...." This would be contrary to the firmly established principle of statutory interpretation that words used by the Legislature have a purpose and a meaning and that we cannot assume that the Legislature used superfluous or meaningless language. *See McCann v. Clerk of Jersey City,* 168 *N.J.* 285, 773 A.2d 1151 (2001)(slip op. at 10); *Macysyn v. Hensler,* 329 *N.J.Super.* 476, 485, 748 *A.*2d 591 (App.Div.2000); *Verniero v. Beverly Hills, Ltd., Inc.,* 316 *N.J.Super.* 121, 126, 719 *A.*2d 713 (App.Div.1998). In addition, the Board necessarily would have reached such a conclusion without any support in the form of factual findings, since it held no hearings, gathered no evidence other than in the form of obtaining public comments, and made no findings of fact in connection with the regulation's adoption. Moreover, the regulation in effect interprets the Act to authorize termination of a longstanding common practice of paying rent to a shopping mall landlord based on a percentage of gross income. We stated in *Kaufman, supra,* 194 *N.J.Super.* at 135, 476 *A.*2d 319, that the "landlord-tenant relationship" of the optometrists in that case, which included rent based on a percentage of revenue, did not "compel an inference of oneness ...," even when combined with other factors, namely, "use of the same advertising agency, similar logos, or the same hours of operation...." Significantly, these percentage of revenue leasing arrangements by optometrists are not confined to this state. *See, for example, Bronstein v. Board of Registration in Optometry,* 403 *Mass.* 621, 531 *N.E.*2d 593, 595–96 (1988), in which the court determined that such a lease arrangement did not constitute illegal fee-splitting by an optometrist and observed:

A percentage lease is an efficient device for figuring the actual value of rented space, and can also serve as a hedge against inflation for the landlord. *See State ex rel. Bd. of Optometry v. Sears, Roebuck & Co.,* 102 *Ariz.* 175, 177, 427 *P.2d* 126 (1967). *Note, The Percentage Lease—Its Functions and Drafting Problems,* 61 *Harv.L.Rev.* 317, 318–320 (1948). A percentage lease "gives [the] landlord an opportunity to share in [the] tenant's success without being saddled with long-term low rental agreements. In leases of shopping center stores its use is virtually universal. In other retail establishments its use is hardly less." 1 *M.R. Friedman, Leases* § 6.1, at 158–159 (2d ed.1983).

A categorical ban on such rent arrangements in all contexts would threaten to sever many consumers from ready access to their vision care providers, because it would operate to drive a number of optometrists out of their mall locations. There is no authority whatever in the statute for such a result.

The Board has called our attention to cases from other states, but we are persuaded that those cases support rather than undermine our conclusion that the regulation is invalid. While the cases from other jurisdictions cannot bind us in our task of construing the New Jersey statute before us now, we are satisfied that they can inform our interpretation. To be sure, some cases from other jurisdictions have presented fact patterns in which economic cooperation between an optometrist and his landlord may have been so pervasive that the landlord was effectively engaging in the unauthorized practice of optometry, *see* Danny R. Veilleux, Annotation, *What Constitutes Practice of "Optometry,"* 82 *A.L.R.4th* 816, §§ 13–15 (1990). We are unable to agree, however, that the out-of-state cases support a conclusion that *N.J.S.A.* 45:12–9.12 authorizes the regulation. We are satisfied, indeed, that revenue-based rent alone, absent other control or cooperation, does not constitute pervasive enough cooperation between an optometrist and his landlord to justify the regulation.

The general approach of cases from other jurisdictions that declined to uphold various business arrangements of optometrists was to take the rent arrangements as merely one factor to consider in determining whether a non-professional had too much control over a professional practice. *See, e.g., California Ass'n of Dispensing Opticians v. Pearle Vision Center, Inc.,* 143 *Cal.*

*App.*3d 419, 191 *Cal.Rptr.* 762, 768 (1983) (Pearle's franchise agreement was illegal because it gave Pearle power to control facets of the optometrist's practice of optometry that was pervasive, including treatment decision, inventory, supplies); *People ex rel. Dunbar v. Lee Optical Co. of Denver,* 168 *Colo.* 345, 452 *P.2d* 21, 26–27 (1969) (lease arrangements alone were insufficient evidence of control, and case was remanded for further fact-finding); *State v. Zale Jewelry Co. of Wichita,* 179 *Kan.* 628, 298 *P.2d* 283, 287–290 (1956) (corporate landlord that advertised optometrist's services, kept optometrist's books and received revenue-based rent, had such extensive control that the optometrist was its employee and it was engaged in practice of optometry); *Sears Roebuck & Co. v. State Bd. Of Optometry,* 213 *Miss.* 710, 57 *So.*2d 726, 733–736 (1952) (corporate landlord that kept optometrist's books and received revenue-based rent engaged in practice of optometry).

Furthermore, the out-of-state cases allowing landlords to collect revenue-based rent from optometrists generally followed the same approach: the rent arrangements were upheld because the landlord's overall control over the professional practice was not excessive. *See State ex rel. Bd. of Optometry v. Sears, Roebuck & Co.,* 102 *Ariz.* 175, 427 *P.*2d 126, 127–129 (1967) (corporate landlord who advertised optometrist's services, reserved right to audit optometrist's books and received revenue-based rent, did not practice optometry); *S.S. Hollender, Inc., v. Morqus,* 156 *Fla.* 173, 23 *So.*2d 89, 91 (1945) (revenue-based rent alone did not constitute a landlord's practice of optometry); *Wyoming State Bd. of Examiners of Optometry v. Pearle Vision Center, Inc.,* 767 *P.*2d 969, 978–979 (Wyo.1989) (extensive financial arrangements between landlord and optometrist did not demonstrate unlicensed corporate practice of optometry, in absence of direct showing that landlord "inhibit[ed] the freedom necessary for the optometrist to practice in a manner which assures that the interests of the patient are given primary consideration.")

The case law from other jurisdictions is, perhaps predictably, not entirely consistent from state to state. But acknowledging that the precise wording of the applicable statutes indeed varies, one conclusion at least can be drawn from the cases from the various jurisdictions to which we have referred: in none of the cases has revenue-based rent alone been sufficient to make the landlord an unlicensed practitioner of optometry, absent other indicia of control or influence over the professional practice.

We have determined that the disputed regulation manifestly is not authorized by the statute. Indeed, it purports to prohibit an arrangement the Legislature has permitted, subject to particular exceptions. More than mere revenue-based rent from an optometrist is needed for a landlord to have control and influence of the nature forbidden by *N.J.S.A.* 45:12–9.12.

Accordingly, we hold that *N.J.A.C.* 13:38–1.3(f) is invalid.