NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4955-15T2

IN THE MATTER OF
RUSSELL S. CLINE.
——————————————————————————————

 Argued April 27, 2017 – Decided August 17, 2017

 Before Judges Lihotz and Hoffman.

 On appeal from the New Jersey Motor Vehicle
 Commission.

 Michael Confusione argued the cause for
 appellant Russell S. Cline (Hegge &
 Confusione, LLC, attorneys; Mr. Confusione, of
 counsel and on the brief).

 Jennifer R. Jaremback, Deputy Attorney
 General, argued the cause for respondent New
 Jersey Motor Vehicle Commission (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Ms. Jaremback, on the brief).

PER CURIAM

 Appellant Russell S. Cline appeals from a final agency

decision issued by the Motor Vehicle Commission (MVC), which

approved the suspension of his driver's registration privileges,

pursuant to N.J.S.A. 27:23-38 and N.J.S.A. 39:5-30. The MVC

conditioned reinstatement of appellant's registration upon
satisfaction of $912.30 in unpaid tolls and $12,225 in

administrative fees owed to the New Jersey Turnpike Authority

(NJTA), along with a $100 registration restoration fee. On appeal,

appellant urges the court to vacate the agency decision, arguing

the MVC did not provide timely notice of the fines and assessments,

and violated statutory law by suspending his registration

privileges prior to filing an action. Further, appellant argues

administrative fees, issued for each toll violation, are

unreasonable and the doctrine of latches bars payment because the

three-year delay in commencing administrative proceedings

prejudiced appellant's ability to contest the charges.

 We reject appellant's procedural and substantive challenges

attacking the registration suspension pending satisfaction of the

outstanding tolls. However, following our review, we conclude the

record contains insufficient evidence to sustain the amount of the

administrative assessments imposed, requiring us to remand for

further proceedings.

 Between August 25, 2011 and December 28, 2012, appellant,

used an E-ZPass lane even though the credit card linked to his

E-ZPass account had repeatedly declined payment. In total, he

accrued 572 toll violations. In September 2012, appellant's E-

ZPass account was closed, as provided in the E-ZPass contract,

when it remained underfunded for ninety consecutive days.

 2 A-4955-15T2
 In April 2013, the MVC notified appellant it would suspend

his vehicle registration privileges the following month, unless

he satisfied all outstanding tolls and administrative fees.

Arguing the claims by the MVC were erroneous, appellant requested

a formal hearing. Almost three years later, a hearing was held

before an Administrative Law Judge (ALJ), on February 25, 2016.

 Three witnesses testified at the hearing. The MVC called

Carlos Caraballo, assistant violations manager for Xerox, the

company contracted "to run and maintain the electronic toll

collection system on behalf of the . . . agencies under the New

Jersey E-ZPass consortium" and Rebecca Donington, of the MVC

Department of Regulatory and Legislative Affairs. Appellant

testified on his own behalf.

 Caraballo explained the procedure followed when a vehicle

exits a toll plaza through an E-ZPass lane without paying the

toll. If the vehicle is not associated with an active E-ZPass

account, or the account is unfunded, Xerox informs the MVC, which

then issued an advisory notice of enforcement to the recorded

address on the vehicle's registration. The notice included a

picture of the vehicle captured at the toll plaza, the toll due,

any applicable fees, and options to dispute the notice. Xerox

issued three notices over a 105-day period. If payment, or

challenge, is not received, the matter is transferred to pursue

 3 A-4955-15T2
formal collection. Xerox also retained records of customer

contacts and phone calls regarding alleged toll violations.

 Caraballo stated the administrative fee, initially set at $25

for each violation, was raised to $50 per violation during the

period relevant to the instant case. The fee offsets

administrative expenses to enforce the unpaid toll, such as the

cost of: maintaining the violation enforcement cameras, storing

the image on a server, transmitting the image, undertaking a motor

vehicle look-up, reviewing the matter, processing disputes,

printing, and postage. He stated the fee is a fixed amount and

does not vary whether the fee is paid to the MVC, or if the account

has been sent to collection. However, there are variations in

application of the administrative fee by certain toll roads.

Applicable to this matter, the NJT charges $50 for a single

violation but the GSP imposes one $50 fee for up to four tolls

missed in a single day.

 Caraballo identified the toll violations on the New Jersey

Turnpike (NJT) and the Garden State Parkway (GSP) attributed to

appellant's registered vehicle. Reviewing the records of

violations, he was able to provide the date, time, place and exact

toll lane where each violation occurred. Further, he recited the

date Xerox mailed the notice of violation to appellant. Caraballo

also provided a summary sheet of the violations, tolls due, and

 4 A-4955-15T2
administrative assessments, concluding unpaid tolls were $912.30

and the associated administrative fees totaled $12,200.

 On cross-examination, in an effort to show the MVC's records

were not "complete," appellant questioned why certain notices of

violation, incurred during the specified period, were not listed

among records Caraballo identified. Appellant also challenged

inconsistent dates between MVC's record of violations, and notices

he received in the mail. Caraballo generally attributed the

apparent discrepancy to a change in the mail processor used by

Xerox. He confirmed "[t]he actual toll violation transactions

date and time, the name and address all match," the records

admitted into evidence, and the only discrepancy was the date the

notice was mailed. Also discussed were records showing appellant's

settlement of 478 different E-ZPass toll violations, noting the

MVC waived its claim for administration fees on these matters

because appellant resolved those claims within 105 days of the

violations, and no referral for collection was initiated.1

 Donington testified that as a result of appellant's repeated

toll violations, the MVC suspended his registration. Her office

1
 Caraballo explained one could use the MVC website and transfer
the violations to a valid E-ZPass account for payment. He noted
some of appellant's past violations were resolved this way. As a
result, administrative fees were waived. We also note the hearing
giving rise to this appeal did not adjudicate the other 478
violations.

 5 A-4955-15T2
prepared and mailed the notice to appellant at his last reported

address on April 22, 2013. She also explained the steps necessary

for appellant to restore his registration, which included

satisfaction of the tolls, administrative fees, and a restoration

fee.

 In his testimony, appellant asserted in the past he resolved

E-ZPass violations before the administrative fee attached.

Regarding the unpaid amounts now asserted as due by the MVC, he

acknowledged he received notices for the 2011 violations, but

maintained they arrived later than the date stated by Caraballo.

Appellant stated the late mailing dates limited his ability to

contact the MVC to "fix it." Further, as to violations in 2012,

appellant insisted he did not receive any written notices; however,

he confirmed his address matched the MVC's records, and also

acknowledged he received emails.

 Additionally, defendant argued he could not afford the

administrative fees and believed he should not be obligated to pay

them because of the late notices. Appellant agreed he received

"a letter that said [the NJTA was] gonna [sic] stop mailing

statements," in lieu of email notices. He contacted "E-ZPass a

number of times, trying to resolve" the obligations, but agreed

he never raised the problem of late received notices. Finally,

 6 A-4955-15T2
he claimed the delay in the administrative proceedings prevented

acquisition of phone records showing these calls.

 On April 28, 2016, the ALJ issued his decision. He rejected

appellant's arguments, approved the suspension, and ordered

satisfaction of all amounts due. Appellant appealed to the

Commissioner of the MVC. In a decision dated June 6, 2016, the

Commissioner adopted the ALJ's findings and conclusions, with a

slight modification to the amount due. This appeal followed.

 Our review of an administrative agency's final decision is

limited and we give due regard to the agency's credibility

findings. Logan v. Bd. of Review, 299 N.J. Super. 346, 347-48

(App. Div. 1997). In our review we examine

 (1) whether the agency's action violates
 express or implied legislative policies, that
 is, did the agency follow the law; (2) whether
 the record contains substantial evidence to
 support the findings on which the agency based
 its action; and (3) whether in applying the
 legislative policies to the facts, the agency
 clearly erred in reaching a conclusion that
 could not reasonably have been made on a
 showing of the relevant factors.

 [In re Herrmann, 192 N.J. 19, 28 (2007)
 (quoting Mazza v. Bd. of Trs., 143 N.J. 22,
 25 (1995)).]

In this regard, we uphold the agency's determination unless a

challenger presents "a clear showing [the decision] is arbitrary,

 7 A-4955-15T2
capricious, or unreasonable, or that it lacks fair support in the

record." Id. at 27-28.

 The obligations of motorists using toll roads is set forth

by statute. "No vehicle shall be permitted to make use of any

highway . . . operated by the New Jersey Turnpike Authority . . .

except upon the payment of such tolls, if any, as may from time

to time be prescribed by the Authority." N.J.S.A. 27:23-25.

Further, the Legislature has authorized the MVC "in addition to

any punishment or penalty provided by other sections," to suspend

or revoke the license or registration certificate for, among other

things, nonpayment of tolls. N.J.S.A. 27:23-38; see also N.J.S.A.

39:5-30 ("Every registration certificate, every license

certificate, every privilege to drive motor vehicles, . . . may

be suspended or revoked, . . . for a violation of any of the

provisions of this Title or on any other reasonable grounds.").

 On appeal, appellant first argues the MVC failed to provide

timely notice of the violations. Relying on N.J.S.A. 27:23-34.3,

he urges written notice must be provided within sixty days of the

violation. Asserting the MVC did not meet this mandate, he argues

the request for payment and the administrative assessment is out

of time, making suspension of his registration unfounded. We are

not persuaded.

 8 A-4955-15T2
 Importantly, appellant does not assert he was denied notice

of the proposed suspension or revocation of registration imposed

for violating toll obligations. N.J.S.A. 27:23-38 (requiring

written notice of the proposed registration revocation). Rather,

appellant's argument invokes language from N.J.S.A. 27:23-34.3(a)

which states: "If a violation of the toll collection monitoring

system regulations is committed . . . the agent of the authority

may send an advisory and payment request within 60 days of the

date of the violation to the owner of the vehicle . . . providing

. . . the opportunity to resolve the matter prior to the issuance

of a summons and complaint . . . ." The statute permits a process

to resolve disputes regarding toll obligations, prior to

initiation of legal action. Its language is permissive, and does

not compel a prerequisite to collection of unpaid tolls or the MVC

exercise of authority pursuant to N.J.S.A. 27:23-38. See Fogerty

v. Fantasy, Inc., 510 U.S. 517, 533, 114 S. Ct. 1023, 127 L. Ed.

2d 455, 469 (1994) ("The word 'may' clearly connotes discretion.").

 The evidence presented in the administrative hearing reflects

Xerox issued notices to appellant of each toll violation, at his

address. The notice was issued within the period stated in

N.J.S.A. 27:23-34.3(a) and included a photograph of his license

plate at the toll plaza, the date of the offense and even the toll

lane used. See SSI Med. Servs. v. Dept. of Human Servs., 146 N.J.

 9 A-4955-15T2
614, 621 (1996) (recognizing "a presumption that mail properly

addressed, stamped, and posted was received by the party to whom

it was addressed"). Later, notices were sent electronically.

Again, appellant received and ignored them.

 Appellant's testimony the notices were untimely or not

received was apparently found not credible by the ALJ. We note

appellant never presented or articulated a need for more time to

resolve his challenges because of the allegedly untimely notices,

despite what he described as constant contact with E-ZPass

regarding the violations. He presented no evidence other than his

own testimony supporting his position the notices were untimely

mailed. We also observe appellant knew of the violations when

committed. For years, he purposely used the toll roads without

payment, essentially using funds due the taxpayers of this State

at his convenience. His contention of insufficient notice is at

best specious.

 Appellant next claims registration suspension is permitted

only following initiation of a formal proceeding in municipal

court. In pertinent part, N.J.S.A. 27:23-34.4 provides "[t]he

municipal court of the municipality wherein a toll collection

monitoring system record was made shall have jurisdiction to hear

violations of the toll collection monitoring system regulations."

However, N.J.S.A. 27:23-38, and N.J.S.A. 39:5-30, permit the MVC

 10 A-4955-15T2
to pursue administrative remedies against offenders. We do not

view these avenues as mutually exclusive.

 We also are unpersuaded appellant suffered prejudice by the

delay in initiation of the administrative hearing. The record

does not show the MVC was dilatory. Further, appellant's bald

assertion is insufficient to trigger latches. See Nw. Covenant

Med. Ctr. v. Fishman, 167 N.J. 123, 141 (2001) ("The primary factor

to consider when deciding whether to apply laches is whether there

has been a general change in condition during the passage of time

that has made it inequitable to allow the claim to proceed.").

Here, suspension of appellant's registration did not occur until

the final determination was issued in June 2016. We reject his

claim of prejudice.

 The final argument attacks the reasonableness of the

administrative fee attached to each toll violation.

 An administrative regulation is accorded a
 presumption of validity against a party's
 challenge that the regulation is arbitrary,
 capricious, or unreasonable. N.J. League of
 Muns. v. Dept. of Cmty. Affairs, 158 N.J. 211,
 222 (1999). "If procedurally regular, it may
 be set aside only if it is proved to be
 arbitrary or capricious or if it plainly
 transgresses the statute it purports to
 effectuate . . . or if it alters the terms of
 the statute or frustrates the policy embodied
 in it." In re Repeal of N.J.A.C. 6:28, 204
 N.J. Super. 158, 160-61, (App. Div. 1985)
 (citations omitted). See also In re Adoption
 of N.J.A.C. 13:38-1.3(f) by the State Board

 11 A-4955-15T2
 of Optometrists, 341 N.J. Super. 536, 542-43
 (App. Div. 2001).

 [In re Reg. of Oper. Serv. Providers, 343 N.J.
 Super. 282, 327 (App. Div. 2001).]

 Imposition of an administrative fee assessed against

violators is authorized by N.J.S.A. 27:23-34.3(a), which provides:

 The authority or its agent may require as part
 of the advisory and payment request that the
 owner pay to the agent the proper toll and a
 reasonable administrative fee established by
 the authority and the based upon the actual
 cost of processing and collecting the
 violation.

 Regulations promulgated by the Commissioner establish the fee

stating only: "the violating vehicle shall pay to the Authority

or its agent, the proper toll and an administrative fee in the

amount of $50.00 per violation." N.J.A.C. 19:9-9.2(b). We note

during the course of appellant's violations relevant to this

appeal, on October 17, 2011, the administrative fee was raised

from $25 to $50. See 43 N.J.R. 2672(b). This rule change was

first proposed on June 6, 2011. See 34 N.J.R. 1325(a)

("Administrative Fee for E-ZPass Violations; Video Enforcement of

Toll Violations in Garden State Parkway Exact Change Lanes;

Prohibition of Non-Passenger Vehicles in Garden State Parkway

Exact Change Lanes; Public Access to Authority Records"). The

proposed amendment to N.J.A.C. 19:9-9.2(b) noted:

 12 A-4955-15T2
 The administrative fee has remained unchanged
 at $ 25.00 since the implementation of E-ZPass
 in the late 1990s. A financial analysis
 conducted by Authority staff shows that the
 actual costs of enforcement have risen to $
 50.00 per violation. The Authority proposes
 an amendment to N.J.A.C. 19:9-9.2(b) to
 increase the administrative fee to $ 50.00 per
 violation, in order to allocate the
 enforcement costs to the narrow class of
 habitual or intentional toll violators. This
 increase will only affect E-ZPass violators,
 and the Authority's practices for the
 adjudication of inadvertent toll violations
 will remain unchanged.

 The aforementioned financial analysis was not introduced into

the administrative record, nor was it a component of the State's

case below or included in its brief on appeal. When questioned

as to the total amount of fees assessed, Caraballo stated: "The

reason why is because, at one point, the administrative fee was

$25. . . . And then . . . the Turnpike increased it to 50."

Unfortunately, Caraballo's testimony establishing the costs to

justify the underlying $50 administrative fee for each toll

violation was brief and general. He said:

 I mean, some of the -- some of the costs – and
 it's not all-inclusive, but some of the costs
 can be, again, mailing, print and mail,
 postage, envelopes, image capture, the
 violation enforcement cameras, storing the
 images on the server, transmission. So, it's
 all-encompassing. And there's some things I'm
 missing, but that was established as -- as --
 $50 was established as the cost for the whole
 violation enforcement. . . . Handling

 13 A-4955-15T2
 disputes, handling payments is also a cost
 that is inclusive of that . . . $50 fee.

 We are constrained to conclude this record is insufficient

to support the calculation of the fee as matching "the actual cost

of processing and collecting the violation" mandated by N.J.S.A.

27:23-34.3(a). Accordingly, a remand is required. See Oper.

Serv. Providers, supra, 343 N.J. Super. at 327.

 We reject appellant's suggestion that because the

administrative fee significantly exceeds the toll, it is

unreasonable. The need for a sophisticated system to capture toll

violators easily shows the cost to track such individuals down

would exceed the comparatively modest cost of any given toll.

Prudently, the Legislature decided taxpayers should not bear this

burden and shifted the expense to those who commit toll violations

and fail to address their lapse. If the cost of collection is

$50, the sum does not shock the court's sense of fairness.

 However, the Legislature provided the agency may charge a fee

that reflects "the actual cost of processing and collecting the

violation." N.J.S.A. 27:23-34.3(a) (emphasis added). The fee

cannot be a disguised method of generating revenue or a penalty.

While the Agency abided by the proper procedures necessary to

increase the administrative fee, we conclude the State's proofs

as to the reasonableness of the fee itself are insufficient. We

 14 A-4955-15T2
owe no deference to a regulation we believe runs contrary to its

authorizing statute. See Oper. Serv. Providers, supra, 343 N.J.

Super. at 327.

 An agency exercising the power of the State must act fairly

and candidly towards those whose interests may be affected by

agency action. Univ. Cottage Club of Princeton N.J. Corp. v. N.J.

Dept. of Envir. Prot., 191 N.J. 38, 57 (2007). It remains

imperative that "government must 'turn square corners.'" F.M.C.

Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985)

(quoting Gruber v. Mayor and Twp. Com. of Raritan, 73 N.J. Super.

120 (App. Div.), aff'd, 39 N.J. 1 (1962)). Accordingly, the fee

imposed must properly be based on the average cost of processing

and collection of unpaid tolls and may not be an arbitrary

estimation.

 Our ruling does not require a determination of the individual

cost to pursue each toll appellant evaded on a toll-by-toll basis.

Rather, on remand, the MVC must demonstrate the computation of the

"actual cost of processing and collecting" toll violations, on a

general basis. N.J.S.A. 27:23-34.3(a). Furthermore, such fee

must be uniformly, and rationally, applied to violators throughout

the State. Testimony showing toll violations throughout the state

are processed once per day. Thus, in presenting support for

setting the administrative fee the MVC must substantiate the basis

 15 A-4955-15T2
for application on a per violation basis, N.J.S.A. 27:23-34.3(a),

to ameliorate the cost of collection, and not to assess a disguised

fine. Compare Fee, Black's Law Dictionary (9th ed. 2009) (defining

fee as "a charge for labor or services"), with Fine, Black's Law

Dictionary (9th ed. 2009) (defining fine as "a pecuniary criminal

punishment or civil penalty").

 We reject as unavailing appellant's claims of insufficient

ability to pay these obligations. Appellant's ample past

interactions with the MVC made him well versed an administrative

fee attached as a consequence to his decision not to pay the tolls

when due. Nevertheless, we are constrained to remand for further

proceedings to determine the proper administrative fee, and the

scope of appellant's violations warranting assessment of the

administrative fee on a rational basis.

 Affirmed in part and remanded for additional review

consistent with this opinion. We do not retain jurisdiction.

 16 A-4955-15T2